UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA JANE COFFMAN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-02088 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff applied on September 9, 2013 for DIB, alleging disability beginning August 31, 2011. Administrative Transcript ("AT") 167-70. Plaintiff alleged she was unable to work due to CRPS, PRSD, concussion, post-concussion, PTSD, and anxiety. AT 209. In a decision dated

////

1

March 30, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 14-26. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since August 31, 2011, the alleged onset date.[2]
>
> 3. The claimant has the following severe impairments: complex regional pain syndrome (CRPS) and reflex sympathetic dystrophy (RSD).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[2] Plaintiff's alleged onset date corresponds to the date she tripped and fell at work, extending her arms to catch herself but falling heavily on her left wrist and hitting her head on the floor. AT 455, 857.

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; she could six for six hours out of an eight-hour workday; she could stand and/or walk for six hours out of an eight-hour workday; she is not to reach overhead with the nondominant upper left extremity; she could occasionally reach otherwise, handle, finger and feel with nondominant upper extremity; she is to avoid exposure to all hazards such as unprotected heights and moving machinery.

   6. The claimant is unable to perform any past relevant work.

   7. The claimant was born on March 16, 1962, which is defined as an individual closely approaching advanced age, on the date the application was filed.

   8. The claimant has at least a high-school education and is able to communicate in English.

   9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

AT 16-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ assigned significant weight to a medical opinion that plaintiff was limited to sedentary work, then improperly found plaintiff had the RFC for light work; (2) The ALJ improperly weighed the medical opinion evidence; and (3) the ALJ's credibility finding was flawed because he failed to consider plaintiff's consistent work history.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff argues that the RFC for light work is inconsistent "not only with the underlying record, but the ALJ's own findings that plaintiff is limited to 'sedentary work.'" (ECF No. 10-2 at 17.) Plaintiff further argues that, if she were properly limited to sedentary work, she is entitled to a finding of "disabled."

Plaintiff first cites the medical opinion of Dr. T. Tran, who performed a neurological consultative examination on June 12, 2014. AT 888-90. Dr. Tran opined that, due to constant pain in her non-dominant left wrist and arm, plaintiff "may have limitation using her left hand." AT 890. He opined that plaintiff could lift and carry up to ten pounds occasionally and five pounds frequently, but also found her extremities and range of motion "within normal limits"

except as to the left wrist. AT 889-90.

The ALJ summarized Dr. Tran's findings as follows:

> The claimant is alert and oriented times three. She has good comprehension and attention. The claimant has good visual fields. Extraocular movements are intact. Cornea is positive. There is not facial drooping. She is able to hear normal conversations. Her speech is normal. . . . Motor strength was 5/5 in all four extremities except the left wrist and left grip are 2-3/5 due to pain. There is no muscle atrophy. . . . The claimant has a normal gait. She is able to perform tandem. The claimant was diagnosed with reflex sympathetic dystrophy with constant pain in her left wrist and arm. She may have limitation using her left hand.

AT 21; see AT 888-90.

The ALJ gave "significant weight to Dr. Tran, who opined sedentary limitations. This was based on an in-person exam, the assessment is complete, specific facts are cited upon which the conclusion is based, and is reasonably consistent with the record as a whole. Therefore, it is given significant weight." AT 23 (record citation omitted).

However, prior assessing the medical opinions, the ALJ explained:

> As for the opinion evidence, in determining the claimant's [RFC], <u>no single assessment has been completely adopted as the [RFC] determined herein</u>. I find the limited light limitations adopted herein generously consider the claimant's subjective complaints. These have been balanced with what the claimant has admitted she can do and the objective medical diagnostic and clinical findings discussed herein."

AT 22 (emphasis added). Elsewhere in the decision, the ALJ noted that plaintiff was able to perform numerous daily activities "independently, appropriately, effectively, and on a sustained basis," including living alone, cooking, shopping, making the bed, doing the dishes, going for 40-minute walks, doing laundry, watering plants, vacuuming, and cleaning, as well as personal care. AT 17.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80

F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff asserts that the ALJ committed reversible error by purporting to give significant weight to Dr. Tran's opinion, but not including all the limitations Dr. Tran identified in the RFC – including Dr. Tran's opinion that plaintiff could only lift and carry five pounds frequently and up to one pound occasionally – without explaining why he rejected these limitations.

However, the ALJ also assigned great weight to a December 2013 consultative examination by Dr. Birgit Sierkekotte, who, like Dr. Tran, noted limitations in plaintiff's non-dominant arm and hand. Dr. Sierkekotte reported tenderness in the left upper extremity and reduced left grip strength, while "[r]ight upper extremities are unremarkable." AT 773-776. Dr. Sierkekotte found plaintiff to have no limitations as to standing, walking, or sitting, and able to lift "20 pounds occasionally and 10 pounds frequently based on decreased strength and decreased range of motion of the left upper extremity." AT 776. Similarly, the RFC allowed for plaintiff to lift and/or carry ten pounds frequently and twenty pounds occasionally, i.e., to perform light

work, with limitations on her non-dominant left extremity. The ALJ gave several reasons for crediting Dr. Sierkekotte's opinion, which was – like Dr. Tran's – partially reflected in the RFC. AT 23. Notably, the RFC reflected both doctors' opinions that plaintiff was limited in the use of her left arm and hand.

Plaintiff also argues that the ALJ improperly rejected the opinion of treating physician Dr. John Massey, who diagnosed plaintiff with left upper extremity CRPS in early 2012 and in May 2014 filled out a two-page medical source statement form. AT 468, 884-885. Dr. Massey indicated on the form that plaintiff could lift less than 10 pounds occasionally because of her inability to use her upper left extremity; that she could stand or walk for less than two hours in a normal workday due to dizziness and anxiety; that she could sit for six hours in a normal workday; and that she could never reach, handle, finger, grasp, or manipulate with her left upper extremity. AT 884-885.

The ALJ accorded little weight to Dr. Massey's May 2014 functional capacity report

> because it is not supported by objective evidence and it is inconsistent with the record as a whole. Dr. Massey primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision, which include many stable findings.[3] This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision. Therefore, this is given little weight.

AT 22. See Lindquist v. Colvin, 588 Fed. Appx. 544, 2014 WL 5394562, *1 (9th Cir. Oct. 24, 2014) (unpublished) ("Inconsistency between a physician's opinion and the claimant's daily activities suffices as a specific and legitimate reason for discounting the physician's opinion if supported by substantial evidence from the record as a whole."), citing Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600-602 (9th Cir. 1999); Hensley v. Colvin, 600 Fed. Appx. 526, 2015 WL 1640556, *1 (9th Cir. 2015) (unpublished) (ALJ reasonably determined that treating psychologist's opinion was inconsistent with plaintiff's "reported daily activities, which included

---

[3] See AT 20-21, summarizing treatment records generally showing "routine, conservative and non-emergency treatment since the alleged onset date."

attending to personal care, cooking, cleaning, shopping for groceries, taking the bus and swimming for exercise"), citing Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (plaintiff's ability to perform multiple daily activities "may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

In contrast to Dr. Massey's assessment, the RFC reflected that plaintiff could walk and/or stand up to six hours in an eight-hour workday. AT 22. Dr. Massey himself indicated that plaintiff could frequently walk 30-40 minutes out of an hour and could sit constantly for a full hour. AT 662; see also AT 663 (plaintiff reported she could walk up to 30 minutes at a time). The ALJ found plaintiff's subjective complaints less than fully credible, a challenged finding discussed below. AT 19-20.

Plaintiff also asserts that the ALJ improperly discounted the opinion of Dr. Allen Kaisler-Meza, who examined plaintiff in January 2013 for a Panel Qualified Medical Reevaluation for Preferred Employers. AT 631-639. Based on his review of plaintiff's medical records and his two examinations of her, Dr. Kaisler-Meza stated that plaintiff had "complex regional pain syndrome/RSD of non-dominant left upper extremity." AT 637. As to work status, he opined that plaintiff "will be precluded from use of left upper extremity except for very simple isolated tasks of the hand in a non-repetitive fashion and strictly below shoulder level." AT 638.

The ALJ assigned Dr. Kaisler-Meza's opinion little weight for the same reasons as Dr. Massey's: unsupported by objective evidence, primarily based on subjective complaints, and inconsistent with the record of stable findings and plaintiff's daily activities. AT 23.

The ALJ acknowledged that plaintiff's ability to perform the full range of light work was "impeded by additional limitations." AT 25. The vocational expert testified that a person with plaintiff's RFC, including such limitations, could perform "light-duty unskilled occupations" including furniture rental clerk, usher, and tanning salon attendant. AT 25-26, 55. The vocational expert further testified that none of these jobs would require "two-handed activity" or require lifting more than 10 pounds. AT 56, 58. The ALJ found the VE's testimony consistent with the information contained in the Dictionary of Occupational Titles and concluded that plaintiff would be able to perform these representative occupations. AT 25-26.

Based on this record, the undersigned concludes that the ALJ supplied specific and legitimate reasons for discounting the sedentary work limitation in Dr. Tran's opinion, and that the RFC (including widely-identified limitations on plaintiff's left arm and hand) is supported by substantial evidence.

B. Credibility

Plaintiff asserts that the ALJ erred in finding plaintiff less than fully credible because he failed to consider her strong work history as part of the credibility assessment. See 20 C.F.R. § 404.1529(c)(3). Plaintiff does not claim the ALJ's credibility analysis was otherwise flawed.

The ALJ found that plaintiff's medical impairments could be reasonably expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. AT 20. The ALJ considered multiple factors bearing on credibility, including plaintiff's history of "routine, conservative, and non-emergency treatment since the alleged onset date," her daily activities (described above), and the medical opinion evidence. AT 20-24. The ALJ stated that the RFC "takes into consideration the claimant's subjective complaints while finding the maximum limitations based on the objective evidence." AT 24.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff points out that she has a strong work history, having worked consistently between 1980 and 2012. AT 180-181. In his decision, the ALJ noted plaintiff's past relevant work as an administrative assistant and determined she was unable to perform such work as it required frequent reaching, handling, and fingering. AT 24-25. The ALJ also noted that plaintiff went to work part-time in November 2011 and stopped several months later due to her impairments, characterizing this as an unsuccessful work attempt. AT 16. However, he did not mention plaintiff's work history in the credibility determination. AT 19-20.

Plaintiff cites Simmons v. Colvin, 2016 WL 6436829, *8 (C.D. Cal. Oct. 31, 2016), in which the district court stated: "An ALJ is required to consider a claimant's work history when assessing credibility. Evidence of a poor work history is a clear and convincing reason to discredit plaintiff's credibility," citing 20 C.F.R. § 404.1529(c)(3). However, other courts have rejected the contention that the ALJ is required to address a claimant's "exemplary work history" in assessing her credibility. Greer v. Comm'r of Soc. Sec., 2018 WL 5885942, *8 (C.D. Cal. Nov. 7, 2018) ("An ALJ is not required to discuss the claimant's work history in determining

credibility."), citing Rocha v. Comm'r of Soc. Sec., No. 15-1298, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016); see also Smith v. Colvin, No. 11-3045, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (rejecting claimant's argument that ALJ was required to consider good work history and noting lack of authority "suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history"); Henderson v. Colvin, No. 14-870, 2015 WL 5768934, at *6 (C.D. Cal. Sept. 30, 2015) ("Plaintiff's assertion that his fairly 'consistent and continuous employment for 32 years' is necessarily probative of his credibility is equally unconvincing.").

In Rael v. Berryhill, 2018 WL 1404899, *3 (D. Nev. Feb. 27, 2018), the district court found that the ALJ's failure to explicitly consider a claimant's "exemplary work history" as a factor in her credibility was harmless error. The court reasoned:

> The ALJ does not specifically reference Rael's work record when discussing his determination of Rael's credibility. To the extent that the ALJ's failure to explicitly consider Rael's work record constitutes an error, the error is harmless. The ALJ expressed an understanding of this factor. During the hearing, the ALJ displayed familiarity with Rael's work history (from 1998–2009) as well as the onset date of her alleged disability (September of 2012). (AR 44–45). The ALJ also discussed Rael's work history when evaluating whether she had been gainfully employed (AR 34). The ALJ judge also advances multiple valid reasons for doubting the credibility of Rael's statements about the severity of her symptoms including: inconsistent statements, lack of objective medical evidence, contradictory medical opinions, and Rael's testimony of a lifestyle that was inconsistent with the severity of symptoms alleged. (AR 24–32). With the ALJ basing his conclusion as to Rael's credibility on so many valid factors, to the extent his failure to explicitly state his consideration of Rael's work record might be considered error, it was harmless.

Id.

Here too, as the ALJ expressed an understanding of plaintiff's work history and cited multiple valid (and unchallenged) reasons for discounting her credibility, the undersigned finds any error in failing to weigh her work history in the credibility determination to be harmless error.

////

////

11

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) is granted; and

3. Judgment is entered for the Commissioner.

Dated: December 6, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/coffman2088.ssi.ckd